DAVID RANKIN, Appellant, v. JOHN CROW, Appellee.

### APPEAL FROM HENDERSON.

To authorize a court to receive secondary evidence of the contents of a deed lost or destroyed, it should be clearly made to appear that the search for the lost deed has been diligent and thorough in all places where it may reasonably be supposed 'it had been or might be; the statement of a witness that diligent search had been made to find it, is not sufficient.

And if the papers of a party owning or holding such a deed as is supposed to be lost, have ever been in the custody of any other person, such person should be produced to account for the loss.

A party, to avail himself of such secondary evidence, should be required to make at least the same effort that it is expected he would make if he were to lose the benefit of the evidence, if the instrument were not found.

The substance of a lost paper ought to be proved satisfactorily; its contents must have been known to the witness, and understood by him, so as not to leave any doubt as to its material parts.

The jury is bound to take as evidence the testimony of an unimpeached witness. But a witness may be impeached by other witnesses, by his manner of testifying, his feelings towards the parties, inconsistency in his statements, his want of intelligence, or the want of means of knowing the facts of which he testifies.

THE facts of this case are fully stated in the opinion of the court.

The cause was tried before THOMPSON, Judge, and a jury.

WEAD & WILLIAMSON, for Appellant.

O. C. SKINNER, for Appellee.

WALKER, J. This was an action of trespass to real estate, brought by Rankin against Crow, in the Henderson Circuit Court. The first count was for cutting and hauling trees from W. ½ S.W. 10, 9 N., 5 W. The second count, for cutting and hauling trees from plaintiff's premises. To this declaration

defendant filed the general issue and a plea denying title of the premises in the plaintiff, and issue joined. The case was tried before the court and a jury at the December special term, 1857. On the trial, plaintiff introduced a patent from the United States to John Gibson for the premises described in the declaration, dated the 10th of October, 1840. Also a deed from John Gibson to plaintiff, for the same premises, dated January 2nd, 1856, which was acknowledged and recorded in Henderson county. Plaintiff then introduced evidence, tending to prove the trespasses mentioned in the declaration. The defendant, to prove the loss of a deed from John Gibson to one John H. Dunn, introduced his wife, who testified that she was the wife of J. H. Dunn, and had possession of all his papers after his death ; that she did not know anything about a deed from Gibson to Dunn ; that she had made diligent search and had been unable to find any deed ; that she had never seen such a deed, and was satisfied that the deed was lost or destroyed, if any had ever been made ; that she did not know that there ever was such a deed ; that she found the certificate of entry amongst other deeds, and that the deed from Gibson to Dunn might have been destroyed. The defendant also introduced witnesses to prove the contents of this deed. *T. J. Fort* testified that he knew Gibson and Dunn ; that Gibson made a deed to Dunn in August, 1835, for the W. ½ S.W. 10, 9 N., 5 W., for the consideration of $110. That Esq. Jamison read the deed, but witness did not know whether it was a warranty or quit-claim deed ; that it was made in Gibson's house in 1835 ; the witness, Jamison, Dunn and others were present ; that witness and Hague attested it ; that he saw the money paid to Jamison to be paid to Gibson, when the deed was given up ; that Jamison took the acknowledgment of Gibson and wife, and gave the deed to Dunn and the money to Gibson.

*Wm. R. Jamison* testified that he was a justice of the peace in 1835, and took an acknowledgment from Gibson to Dunn ; that Fort was there ; it was at Gibson's house ; that he only supposed it was a deed ; it was acknowledged by Gibson's wife ; that he had no recollection of seeing any money paid, or of giving Gibson any ; that he thought the writing was for a conveyance of land about which they had difficulty ; it was signed by Gibson and wife ; that he was there for the purpose of taking the acknowledgment ; that he did not draw the deed or writing nor know who did, or whether it was written or printed, or partly written and partly printed ; that he did not recollect what the instrument was, but thought it was to convey land or to have the patent to issue in Dunn's name ; might have been to authorize the patent to issue to Dunn.

Rankin *v.* Crow.

Plaintiff introduced *John Gibson*, who testified that he entered the land; deeded it to Rankin, but never deeded it to Dunn, or contracted to deed it to him; that Dunn and others came to his house and threatened to mob him if he did not give up the certificate of entry, and that he promised to give him the certificate of entry; that Dunn and Jamison afterwards came to his house, and he gave up the certificate of entry and signed a paper authorizing the government to issue the patent to Dunn; that Jamison never took his nor his wife's acknowledgment. *Ann Gibson* testified that Dunn and others came to Gibson's to get the certificate of entry; that they took Gibson out from the house; that she is the wife of Gibson; that she never signed any deed or other writing of this land to Dunn; that Jamison never took her acknowledgment.

The jury found a verdict for the defendant. Plaintiff moved for a new trial, which motion the court overruled, and rendered a judgment in favor of the defendant, to reverse which plaintiff brings this case into this court by appeal.

The first question presented is, whether the defendant had made sufficient proof of the existence, loss or destruction of the deed from Gibson to Dunn, to authorize the court to receive secondary evidence of its contents. The evidence to establish its former existence was that of Fort and Jamison; and they testify that a deed was made by Gibson to Dunn in 1835, and that they were present when it was made. The wife of defendant was relied upon to show, by circumstantial evidence, that it was lost or destroyed. She testifies that she was the wife of Dunn, and that after his death she had his papers; that she had never seen the deed, nor did she know that such a deed ever existed; that she had made diligent search for it, and had been unable to find it. She nowhere states where she searched for this deed — not even that she had searched Dunn's papers, but simply that she had made diligent search. This was merely her conclusion of what constituted such a search. Whether the papers had been in her possession from the time of Dunn's death till the time of search, does not appear. For aught that appears, they may have been in the hands of an administrator, executor or guardian of his heirs, and the deed, if it ever existed, may have gone into their hands. If his papers were ever in the custody of any other person, that person should have been produced to account for the loss of this paper. And until the court is satisfied, from the facts testified to by the witness, that the search has been diligent and thorough, the court should not admit secondary evidence of the contents of an instrument of writing.

Rankin *v.* Crow.

This court say, in the case of *Mariner* v. *Saunders*, that "From the nature of the subject, there is some difficulty in laying down a general rule defining the extent of the search a party must make before the court may conclude that the paper is destroyed or lost, so as to admit secondary evidence of its contents. As a general rule, however, we may say, that when from the ownership, nature or object of a paper, it has properly a particular place of deposit, or where, from the evidence, it is shown to have been in a particular place, or in particular hands, then that place must be searched by the witness proving the loss, or the person produced, into whose hands it has been traced. The extent of the search to be made in such place or by such person must depend in a great degree upon the circumstances. Ordinarily, it is not sufficient that the paper is not found in its usual place of deposit, but all the papers in the office or place should be examined, etc. On the whole, the court must be satisfied that the paper is destroyed and cannot be found. It is true the party need not search every possible place where it might be found, for then the search might be interminable, but he must search every place where there is a reasonable probability that it may be found." 5 Gilm. R. 117.

This rule is founded in reason and justice, and to require of the party a less degree of diligence, would be to defeat the object of reducing contracts to writing, and the object of the legislature in requiring conveyances to be by deed. It would leave the tenure to real estate dependent on the frail memory and imperfect understanding of witnesses, who would in many instances be illiterate and ignorant of the legal effect of contracts. The party wishing to avail himself of the benefit of such secondary evidence, should be required to make at least the same effort that is expected the party would make if he were to lose the benefit of the evidence if the instrument were not found. This evidence falls far short of these requirements, and wholly fails to satisfy the mind that the deed has been lost or destroyed, and secondary evidence of its contents was improperly admitted by the Circuit Court.

As the case must be remanded for further proceedings, we deem it proper to determine whether the evidence was sufficient to establish the contents of this deed. Jamison does not profess to know what the deed was; whether it was a deed of conveyance, or only an instrument authorizing the patent to issue in the name of Dunn, he does not undertake to state, nor whether it even related to this land. Fort testifies he was present when it was made; that it was read over by Jamison; that the consideration was one hundred and ten dollars; that it was for the land in dispute; but whether it was a warranty or

quit claim deed, he does not know. He professes to give no part of its contents, or even its terms, except that it was a deed for this land from Gibson to Dunn. To prove the contents of a written instrument, the vague recollections of witnesses are not sufficient to supply its place. The substance of the contract ought to be proved satisfactorily ; and if that cannot be done, the party is in the condition of every other suiter in court who has no witness to support his claim. When the parties reduce their contract to writing, the obligation and duties of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired, if they could be established upon uncertain and vague impressions of witnesses. The party showing the loss of the original " may read a counter part; if there is no counter part, an examined copy ; or if there is not an examined copy, he may give parole evidence of the contents." *Riggs* v. *Taylor*, 1 Pet. R. 591. It was also held by Judge Story, that the evidence of the contents should be satisfactorily established, and leave no doubt of its material parts. And that " when the proof is made out by parole, the witness should have seen and read the paper, and be able to speak pointedly and clearly as to the tenor and contents." *United States* v. *Britton*, 3 Mason R. 464. This evidence does not comply with these requisites. It was material to know whether the deed conveyed a fee simple, a life estate, or a term of years, and it was equally important to know whether it was a quit claim or a warranty. If a quit claim, a subsequently acquired title by Gibson would not enure to Dunn, while it would, under a general warranty deed. The evidence shows that the patent issued, bearing date in October, 1841, and unless it appeared that the land was owned by Gibson when the deed was made, Dunn's heirs got no title by the deed, and if the title was subsequently acquired by Gibson, it did not enure, unless the deed was a warranty. The proof wholly failed to show enough of the contents of this deed, to enable the defendant to defend under it, even if there had been no rebutting evidence.

The objections to the defendant's seventh, eighth, ninth and tenth instructions, are obviated by the amended record, from which it appears, these instructions did not belong to this case, but were those of another and different case, copied by mistake into this record. The twelfth of defendant's instructions told the jury, " that they are not bound to take as evidence the testimony of any witness whom they believe unworthy of credit, whether such witness be formally impeached or not." It is undoubtedly the law, that the jury are bound to take as evidence the testimony of witnesses who are not impeached. A witness

may be impeached by other witnesses,—his manner on the stand, his feelings toward the parties, inconsistency in his statements, his want of intelligence or the means of knowing the facts of which he testifies. If any of the witnesses were impeached in any of these modes, the jury would be justified in disregarding their evidence, unless it were sustained by other evidence in the case. The instruction, as given, was too loose, and was calculated to mislead the jury, and should not have been given without modification. For these various errors, the judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*