## Benjamin S. Prettyman

### *v.*

## Elizabeth Walston and Abraham Walston.

1. Leases.  The assignee of a lease for the life of another at a stipulated annual rent is bound to pay the taxes annually assessed on the leased premises.

2. Same.  Where a lease contains a general description of lands demised, it is open to proof that lessor had no other lands than those in controversy.

3. Same.  A lease or deed conveying lands by the general words, "all our right, title and interest at law and in equity, in and to all lots and parts of lots in the city of Pekin," will convey a particular lot in that city.

Writ of Error to the Circuit Court of Tazewell county; Hon. James Harriott, Judge, presiding.

This was an action of covenant, brought by defendants in error against the plaintiff in error, and tried before Judge Harriott, a jury being waived, at the September Term, 1863.

The declaration contains two counts, one upon the covenants of a lease between defendants in error and one Richard Snell, dated February 7, 1851, averring a breach of covenant in the plaintiff in error as assignee of said Snell, in not paying rent according to the covenant in the lease, profert thereof being made.   And the other count upon the same lease, and for a breach of the same covenants, but averring the loss of the lease to Snell, as an excuse for its non-production; and both counts averring that Snell entered into possession under said lease, and assigned his lease to plaintiff in error; and that said terms and estate thus came and vested in plaintiff in error, who neg-

lected to pay the rent, to the damage of defendants in error, of $1,000.

The first plea alleges that plaintiffs did not make the lease as alleged; that Snell did not covenant to pay rent as alleged; that Snell did not, by virtue of said lease, enter into possession of said premises; and that Snell owned the property in fee in his own right; and that the plaintiffs had not then, or at any time previous to the commencement of this suit, any right or title whatever in the premises.

General demurrer to this first plea, and overruled, and first plea traversed.

The second plea is a plea of payment by Snell and defendant. On this plea issue was tendered to the country.

The third plea alleges that the premises named in the lease were subject to state and county taxes, which were a lien paramount to the title of plaintiffs, and which plaintiffs were lawfully bound to pay off, but did not and would not; and that defendant was compelled to pay these to enable him to enjoy the premises, and that he, defendant, did so pay them; that the taxes so paid by defendant amounted to $3,000, and defendant offered to recoup or set off so much as would satisfy the amount claimed to be due plaintiffs for rent.

To this plea plaintiffs replied double:

1st. That plaintiffs were not bound to pay the taxes on the premises; but that Snell, and afterwards the defendant, was the owner in fee of the premises, and, as such, bound to pay taxes, &c.

2d. That defendant did not have to pay said taxes in order to have the enjoyment of the premises.

And to this second replication to the third plea, defendant joins issue.

To the first replication to the third plea, defendant demurs specially:

1st. Because issue is not tendered upon any material allegation in the plea.

2d. The facts alleged in the replication are a departure from the facts set forth in the declaration.

3d. Because the replication improperly concluded with a verification, whereas, it should conclude to the country, and take issue on the facts set forth in the plea.

This demurrer to plaintiffs' first replication to defendant's third plea, was overruled by the court, and defendant stood by his demurrer.

The fourth plea denies the assignment of the lease from Snell on the 24th March, 1856, or at any time, and denied holding the same as such assignee of the lease, through Snell, of plaintiffs. On this plea plaintiffs took issue.

The fifth plea alleges that, on the 28th January, 1845, Richard H. Snell, named by plaintiffs, was the owner in fee of all the land and lots in plaintiffs' declaration named; that, in 1845, Ludwig and Knudler recovered a judgment against him in the Tazewell county Circuit Court, which was wholly unpaid, and was and continued a valid and subsisting lien on the premises from September, 1845. That on the 28th January, 1851, an execution was issued and levied on said premises as the property of Richard H. Snell; and that the sheriff, at public auction, sold the same to plaintiffs in error, on the 18th day of March, 1851; and that Richard H. Snell failed to redeem the same as required by law; and that, by virtue thereof, on the 19th day of June, 1852, the sheriff, by deed of that date, conveyed the said property to said defendant; and that the title of Richard H. Snell was prior to and paramount to, and said judgment of Ludwig and Knudler against Snell was prior to any title or acknowledgment thereof, on the part of the said Snell, to or in said plaintiffs; and defendant avers that, by virtue of his said purchase and deed aforesaid, he took possession of the said premises so described, and not by assignment of the lease as alleged, and denies all right and title in plaintiffs, and denies all their right to rents and profits therein, and avers that all pretense of right is subsequent to the right and title of defendant; and that plaintiffs' right, since the making of said lease, has ceased and failed, &c.

To this plea plaintiffs demurred; which was overruled, and

23 — 34TH ILL.

plaintiff replied an estoppel, because R. H. Snell did, on the 24th of March, 1856, assign his said lease and interest in said premises to defendant, &c., and plaintiff in error paid rent after the assignment.

To which defendant rejoined and issue to the country, that R. H. Snell did not assign his lease, &c., to defendants.

The sixth plea avers that, before the rent accrued, &c., the defendant sold and assigned all his right, title and interest in said premises, unto W. A. and W. B. Tinney, who entered into possession thereof, and still hold possession of the same, &c. ; of which plaintiffs had notice, &c., and verified.

To which sixth plea plaintiffs' replied, that defendant did not assign his interest in said premises to William A. Tinney and William B. Tinney, or any other person or persons; and concludes to the country, &c.

The seventh plea alleges that he underlet and assigned said premises to other persons, who used and occupied all of the same during all of the time said rent is alleged to have accrued, and to the time said suit was brought, and was not, during said time, in possession thereof. To this plea no replication was made.

The proof shows a lease from Elizabeth Walston and Abraham Walston to Richard H. Snell, dated 7th February, 1851, duly acknowledged and recorded. Also a recorded copy of a quit-claim deed from Snell and wife to Prettyman, dated March, 1856, to sundry described tracts of land not contained in the lease, and then recited : "Also all our right, title and interest at law and in equity, in and to all lots and parts of lots in the city of Pekin, and all undivided interest in said town; also all other he may own or have any interest whatever in, in our own right or in common with others, or in right of either of the parties of the first part at law or in equity, either in the county of Tazewell or elsewhere, in the State of Illinois." The deed purported to have been acknowledged March 25, 1856, and recorded December 8, 1856. Due notice was given to defendant to produce the original before the copy of record was filed.

To the reading of this deed, defendant objected, because the

land described in the lease was not described in the deed, and that Snell had other lands and lots than those named by the lease, designed to be and actually conveyed by it to defendant; but the court overruled the objection, and the deed was read in evidence.

Plaintiffs then called Thomas C. Reeves, who testified that in October, 1854, he leased the lots in question from R. H. and T. Snell for one year; that R. H. Snell was then in possession of them, and witness thinks after his lease was out Snell again took possession and kept it some time.

Middleton Tackaberry testified for plaintiffs, that he knew the premises and R. H. Snell; remembered Snell selling Pekin property to Prettyman; thinks he sold all his property to Prettyman about 24th of March, 1856; knows Snell was in possession of these lots when he sold out to Prettyman; thinks Prettyman got possession of Snell; thinks one Benjamin Priddy took the house on the lots immediately, and kept it some time; then Stone & Wilson, and Stone & McDougall; then Chapman; then Mendenhall; then Wm. A. Tinney took it and kept it until the commencement of this suit; thinks Prettyman never did reside upon these lots or keep the house; lot 17 was an open lot, with a small frame house on it, in 1856; knows that Snell owned other real estate in Pekin besides the lots claimed by plaintiffs.

Samuel P. Bailey testified for plaintiffs, that he knew all the parties and the premises, but knew nothing of the renting; he was a justice of the peace, and took the acknowledgment of the deed of Snell and wife to Prettyman, 24th March, 1856; it was a quit-claim deed; Prettyman did not take possession of the property named in the lease at that time; Snell left soon after making the deed; knows Snell's family remained in possession of these lots and the hotel on them, until after the court in April, 1856. After Snell left, one M. J. App came down and got Snell's family, who were left by Snell on the premises, and took them away; Benjamin Priddy then took possession of the premises, and kept the hotel for some time afterwards.

Plaintiffs then offered deed against objections of defendant;

read a lease of the premises in question, together with lot 2 in block 7, to Stone & McDougall for two years from 15th November, 1857.

Defendant then proved (without objection) that the lots described originally belonged unto one Thomas Snell, long since deceased, and that prior to his decease the same was mortgaged by him to one Gist & Rockey, who foreclosed the mortgage in said court, making plaintiffs defendants therein; and under the decree of the court said lots were sold to said Richard H. Snell, on the      day of         ', 1847. That on the      day of      , 1845, one Ludwig & Knudler obtained a judgment in the Circuit Court of said Tazewell county, against said Richard H. Snell, by virtue of which, upon an alias execution, on the day of         , 1851, the said premises, lots above described, were levied upon as the property of said Richard H. Snell, and sold unto said Benjamin S. Prettyman; and the same not having been redeemed as required by law, the same was, on the 19th day of June, 1852, conveyed by sheriff's deed to said B. S. Prettyman.

Which deed was duly acknowledged and recorded August 21st, 1852.

Defendant then also read (without objection) a deed from himself to one James M. Ruggles, dated July 3d, 1852, duly acknowledged and recorded.

And then read also (without objection) a deed from James M. Ruggles to defendant, dated October 22d, 1855, for the premises in question, and duly acknowledged the same day, and recorded June 2d, 1862.

Defendant then called William A. Tinney, who testified that on the 24th day of May, 1859, he purchased the lots described of B. S. Prettyman, the defendant, who then conveyed them to witness, and witness then took possession of them, and still holds possession thereof.

The court found for the plaintiffs. Whereupon the defendant entered his motion for a new trial, which the court overruled and rendered a judgment, for four hundred and twenty-five dollars and costs, against the defendant.

To reverse this judgment, the defendant Prettyman brings the case here, by writ of error, and assigns for error these several rulings of the court.

Mr. B. S. PRETTYMAN *pro se,* submitted the following brief:

This is an action of covenant on a lease for the rent, against the plaintiff in error, alleging that he is the assignee of the lessee, and so liable for the rent, which is denied; and it is averred that the defendants in error have not and had not any right or title in the premises; and that R. H. Snell, the lessee, before the date of the lease, was the owner in fee of the property leased, and that a judgment was obtained against him before the date of the lease, which was a lien on the land; and that, under the judgment, the land leased was sold under execution, and purchased by plaintiff in error, before the date of the lease; and that it was not redeemed, and pursuant to law was deeded to plaintiff in error, who, by virtue thereof, took possession of the land, and not by virtue of the lease or assignment thereof, as alleged; and that he, plaintiff in error, underlet and assigned said premises to other persons, who occupied the same during all of the time said rent is alleged to have accrued; on all of which issue is taken, except the last, which remains unanswered, and not replied to.

There is no evidence of any assignment of the lease by Snell to Prettyman, and nothing from which it could be inferred, except a general quit-claim deed from Snell to Prettyman, of all his interest in all land and lots in Tazewell county and in the State of Illinois; and it is proved he had *interest and right then* in other land and lots than those named in the lease, in the county and State; and when a quit-claim deed does not specifically include the particular land, and it is shown by the record that the party making it had then no title whatever to the particular tract of land, it should not be so construed as to include land in which he then had no interest. This principle is well settled by the court in *Brown* v. *Jackson,* 3 Wheat. 448; and *McConnell* v. *Reed,* 4 Scam. 121.

Without an assignment of a lease to or actual occupancy by a defendant, no action of covenant can be maintained against him, even though the lessor had title to the premises; and an assignee, even, is only liable while he occupies the premises. *Eaton* v. *Jaques*, 1 Doug. 460, 461; *Smith* v. *Sparks*, 2 Vern. 235; *Paul* v. *Nurse*, 8 B. and C. page 486; 2 Black. Com. 327, note 47.

But it is insisted that Prettyman took possession of Snell, and therefore became thereby an under lessee, while the evidence shows that Prettyman had before purchased, under execution against Snell, the paramount title of the land before the date of the lease, and that Snell, when he made the quit-claim deed, permitted his family to remain on these premises, where they were afterwards taken from by others; and that one Priddy then took the possession of these premises, and that Prettyman *never* had actual possession. But if Prettyman became, by possession, an under lessee, he is not thereby liable in an action of covenant to the lessor for the rent. 1 Doug., 187; Archb. Land. & Ten. 36, 69, 70, 149, side p. 87; and *Chancellor* v. *Pool*, 2 Doug. 765. A mere acceptance of possession is at most a yearly tenancy. Stat. of Frauds, R. S. 45, p. 258; Tay. Land. & Ten. 429. But assignments of leases should be under seal, and not by giving parol possession of the premises. Archb. Land. & Ten. 2, 57, 71, 81.

The attempts of Snell, after he became the owner of the land in 1847, which was then subject to the lien of the judgment then existing against him, to take a lease from Walston, who had no title to himself, was an attempt to defraud his judgment creditors and those purchasing under their judgment, which judgment was at the time a valid lien on the land that the law will not warrant nor the court permit; for from the time the judgment becomes a lien on land, neither an acknowledgment of title in others by taking a lease of the same, or a conveyance of his right in it altogether, can affect the judgment creditor or those holding under him, as the lien of the judgment is paramount to the after conveyance of the judgment debtor.

But it is insisted by Walston that Prettyman is estopped by his possession and the quit-claim deed of Snell, by virtue of the lease to Snell, to dispute his (Walston's) title at the date of the lease to Snell, when the facts show no direct assignment of the lease of this land by Snell to Prettyman, and that Walston had no title at the date of the lease, and Snell had no title at the date of his deed to Prettyman, which does not describe this land; therefore no title could pass by the lease or deed; and it is well settled by the authorities, that where no title or estate passes, there exists no estoppel (Smith's Lead. Cas. 90, 99), and if the grantor has no title to convey at the time of the grant, no title passes by the deed, and the assignee of the grantee, who is covenantor in the lease, takes the estate or assignment of the lease free from the covenants of the assignor.

But defendant below, in his third plea, set up that plaintiffs, by reason of their life estate in said premises, were bound to pay the taxes on the premises, which greatly exceeded all of said rent claimed under said lease, and that said taxes were a lien thereon, and plaintiffs neglected to pay the same, and that he (defendant) had, to enable him to enjoy the use and occupation of said premises, been compelled to pay said taxes, and offered to set off or recoup so much thereof as would satisfy the claim of plaintiffs; to which plaintiffs, in their first replication to this third plea, say that Snell, and afterwards defendant, were the owners in fee of the premises, subject to the life estate of plaintiffs, as contained in said lease; and that as such owners of the fee subject to said life estate, defendant was, at the time, bound to pay all taxes, &c. To this replication defendant demurred, which the court overruled, and defendant stood by it.

That the taxes to the State and county is a lien paramount against the land, I presume will not be questioned. The amount paid not being denied, is admitted, and the only question at law remaining is, who is by law required to pay the taxes on real estate during the existence of a life estate, the owner and possessor of that life estate, or the owner in fee, subject to the life estate in the premises.

That the owner of an estate, for life or for years, is, during

the continuance of said estate, bound to pay all of the taxes accruing thereon to the State and county, would seem to be so clearly based upon reason, that it would strike every mind at first blush as just, if not the law; for while parties enjoy an estate under the law, they should at least extinguish the claims which that law imposes on their property and possessions, while it protects them in that enjoyment. For should this not be the law, persons having a life estate, while the fee remained in the hands of infants, might suffer the land to be sold for the taxes, and so lose the title to themselves, when, if not redeemed by the heirs, the purchaser of the tax title would oust the possessor of the life estate, who would, by neglecting to pay the taxes, forever lose the life estate. This shows the necessity for this payment at the time to save the estate, which would by the law be given to the tax purchaser, and which land, so held, could afterwards be redeemed by the infant owner in fee, after the natural termination of the life estate, on the infant arriving at majority. This is a plain provision of the law (see R. S. 45, p.   ), and would seem to indicate, too plainly to be mistaken, who at the time is liable for the taxes.

But that a tenant for life, who suffers his land to be sold for taxes, ought to, if he does not, forfeit that estate, would seem to be the law; for the life estate is extinguished by the maturing and perfection of the tax title, and remains a title in fee simple in the hands of the tax title purchaser, subject only to be defeated by virtue of the provisions of the statute in favor of infant owners of the fee; and so strong have been the views of the court upon similar provisions of statutes in other States, that on a tenant for life suffering the lands subject to the estate for life to be sold for the taxes levied upon it, they have authorized the reversioner to bring ejectment against the possessor of the life estate, and recover the premises, which, by his neglecting to pay the taxes upon his title to, had been extinguished and become forfeited. See *Lessee of McMillen's Heirs* v. *Robbins*, 5 Ohio, 13.

The demurrer of defendant below, therefore, to the 1st replication of plaintiffs to defendant's 3d plea, ought to have been

sustained, and judgment thereon should have been for the defendant in the court below; and this cause, for this and each of the errors assigned, ought to be reversed.

Mr. E. N. POWELL, for the defendants in error, in reply:

1. This is a suit brought by the appellees against the appellant, upon a lease given by the appellees to one Richard H. Snell, charging the appellant as being the assignee of Snell.

To enable a lessor to maintain an action against an assignee of a lessee *for* covenants running with the land, the assignee must have the whole term. Taylor on Land. and Ten. p. 218.

But if the assignee holds the whole term, then he is liable to the lessor. Taylor on Land. and Ten. 218; *Armstrong* v. *Wheeler*, 9 Cow. 88; *Williams* v. *Woodward*, 2 Wend. 487; *Acker* v. *Witherell*, 4 Hill, 112.

2. Actual entry is not necessary by the assignee. Taylor on Land. and Ten. 219.

The presumption of law is where a man is shown to be in possession of leasehold premises, without any more, is sufficient *prima facie* evidence that he is in as assignee of the original tenant. *Acker* v. *Witherell*, 4 Hill, 112; *Armstrong* v. *Wheeler*, 9 Cow. 88; *Williams* v. *Woodward*, 2 Wend. 487; 2 Phil. Ev. (ed. 1839), 150, 151.

4. A conveyance of an estate, to which a privilege granted by lease is appurtenant, is sufficient evidence to charge him acquiring the principal estate with rent, as assignee of the interest conveyed by the lease. *Provost* v. *Caldor*, 2 Wend. 517; *Post* v. *Kearney*, 2 Comst. 394; *Childs* v. *Clark*, 3 Barb. Ch. 52; *Van Rensselaer* v. *Bradley*, 3 Denio, 135; *Van Rensselaer* v. *Gallup*, 5 id. 454; *Jacques* v. *Short*, 20 Barb. 269.

5. While tenancy exists, the tenant cannot dispute landlord's title by setting up title in himself or a third person. *Rigg* v. *Cook*, 4 Gilm. 336; *Ferguson* v. *Miles*, 3 id. 359.

The same principle applies to those acquiring possession from the tenant. *Tilghman & West* v. *Little*, 13 Ill. 241, and cases cited; *Cooper* v. *Smith*, 8 Watts, 536.

6.   As to the second error assigned, the following authorities are conclusive:

If one of several pleas be unanswered and the parties go to trial without any objection on the part of the defendant, the irregularity is waived.   *Brazzle et al.* v.   *Usher,* Beecher's Breese, 35; *Ross* v. *Reddick,* 1 Scam. 74; *Rupel* v. *Hamilton,* 2 id. 57; *Wills* v. *Mason et al.* 4 id. 88–9; *Armstrong* v. *Mock,* 17 Ill. 166; *Kelsey* v. *Lamb,* 21 id. 559.

The last case referred to is a case so directly in point that I call the especial attention of the court to it.   In this case the parties consented to waive a jury, and go to trial.   No steps were taken by the defendant for a default for want of a replication to the seventh plea.

The court in the case last above referred to, says that, " if the defendant has filed his plea, and the other party fails to reply within the time required by the court, he has a right to judgment by default against the plaintiff, but until he obtains such a default, the pleas cannot be considered as confessed by plaintiff.   It is the default which gives the right to consider and act upon the pleas as true.   In this case no such default was taken.   When the parties submitted the case to trial by the court without a jury, by consent, it had the effect of submitting the case to trial on the pleadings, as if there were proper issues formed, and the court will hear evidence under all the pleas presenting a legal defense, precisely as if the allegations of such pleas had been formally traversed."

In this case the parties waived a jury, and went to trial by court without any objection on part of defendant.

7.   As to the third error assigned in admitting the record of the deed in evidence, from Snell to Prettyman, the appellant.   The deed as made to him was pertinent to the issue; he was the person to have the custody of the deed, the proper notice had been given him to produce the deed on the trial. Besides, the objections of the defendant below, did not go to the sufficiency of the preliminary proof to allow the deed to be read in evidence, but because the deed was only a

general quit-claim deed, and the land claimed was not named in it, and that Snell had other lands in the county.

The well settled rule of law in such cases being "when the grounds of an objection are set forth in the bill of exceptions, the court will only consider the grounds specified." *Fail and Nabb* v. *Goodtitle*, Breese, 210.

And again, when an instrument of writing is offered in evidence, and it is objected to for want of proof of its execution, that such grounds of objection must be specifically made and set forth in the bill of exceptions, or the want of such proof cannot be assigned for error. *Russel* v. *Whiteside*, 4 Scam. 7; *Webb et al.* v. *Alton Mar. and Fire Ins. Co.* 5 Gilm. 225.

If the deed was objected to because sufficient proof was not made to allow the copy in evidence, that special objection should have been taken. As where various objections may be made to evidence, some of which may be removed by other proofs, the party making the objection ought to point out specifically those he insists on, and thereby put the adverse party on his guard and afford him an opportunity to obviate them. *Sargent* v. *Kellog et al.* 5 Gilm. 280.

8. The demurrer of the appellant to the appellees' first replication to appellant's third plea, was properly sustained. It was a complete answer to the plea and tenders a direct issue, and was no departure from the facts set forth in the declaration and plea.

The replication properly concludes with a verification. 1 Chit. Pl. 601.

A tenant for life is bound to pay the taxes. Blackw. on Tax Titles, 470, 472; *Varney* v. *Stevens*, 22 Me. 331.

Mr. Justice Breese delivered the opinion of the Court:

Some minor questions are suggested by the plaintiff in error, as arising on this record, but the principal one, and the one most elaborately argued, is the question of the liability of the appellant to discharge the taxes assessed against the demised premises. To determine this, it must first be shown what posi-

tion the appellant occupied with reference to the premises. The action is brought against him as assignee of a lease executed by the appellees in right of Mrs. Walston, on the seventh of February, 1851, to Richard H. Snell, of certain lots in the city of Pekin, for a term to continue during the life of Mrs. Walston, at an annual rent of three hundred dollars, payable monthly. Snell entered into possession during the term, and on the 24th of March, 1856, by deed, sold and quit-claimed to appellant, his heirs and assigns forever, certain tracts of land in town. 26 N, range 4 West, and also all his interest in lots and blocks in Westley city, and in all lands adjoining Westley city; also, all his right, title and interest at law or in equity, to all lots and parts of lots in the city of Pekin, and all undivided interest in said town.

Appellant leased the premises to Stone and McDougal by deed, dated November 10, 1857, for the term of two years.

Appellant proved that the premises originally belonged to one Thomas Snell, who had been dead for a long time, and mortgaged by him, in his lifetime, to Gest and Roody, who foreclosed the mortgage, making appellees defendants to the suit, and under the decree of the court the premises were sold and purchased by Richard H. Snell in 1847. That in 1845, Ludwig and Kneedler obtained a judgment in the Tazewell Circuit Court, against Richard H. Snell, and in 1851, by an execution then issued, the premises were levied on as the property of R. H. Snell, and sold by the sheriff to appellant, to whom he executed a deed on the 19th day of June, 1852.

On the third day of July, 1852, appellant conveyed the premises to one James M. Ruggles, who, on the 22d of October, 1855, reconveyed the same to appellant.

On the sale by R. H. Snell to appellant, on the 24th of March, 1856, appellant took possession of the premises, and on the 24th of May, 1859, conveyed them to one Tinney, who took possession and held them at the time of the trial of the cause.

These being the prominent facts of the case, the question arises, under what title must the appellant be held to have entered into the premises; under that of R. H. Snell, the rever-

sioner, the owner of the fee, or as his assignee under the lease? Appellant claims he was in under the reversioner, and therefore not liable for the rents reserved, and upon this question depends the other raised by the defendant's third plea and subsequent pleadings arising thereout.

The plea states in substance that the premises were annually assessed for State, county and city taxes, which the plaintiffs (appellees) were legally bound to pay, and which they neglected to do, and to enable appellant to enjoy the premises he had been compelled to pay those taxes, amounting annually to three hundred dollars, and that the whole sum paid for taxes amounts to three thousand dollars, which appellant offers to recoup against the damages claimed for the non-payment of the rent, and that they amount to more than all the rent in arrears.

A demurrer to this plea would have brought up the question as to where the liability lay to pay these taxes, and have superseded these multiplied pleadings by replications and demurrers thereto with which the record is incumbered.

The record does not show how appellees became clothed with the title to these premises, or explain why it was, Richard Snell, owning the fee, consented to take a life lease from appellees; but this does not affect the merits of the controversy, on the principle that Snell, having accepted the lease and gone into possession under it, cannot, nor can his assignee, dispute the lessor right to demise, at least not until he shall have surrendered the possession to them.

It will be observed that the sheriff's deed to appellant, was long prior to Snell's deed to him, the first being executed on the 19th of June, 1852, and the last, on the 24th of March, 1856. At the time of the sale by the sheriff and the execution of the deed by him, Richard H. Snell held the lease executed by appellees; he was at that date their lessee, and in possession. Appellant did not take possession under the sheriff's deed although he sold to Ruggles in a few weeks thereafter, nor is there any evidence that Ruggles ever took possession, or that appellant took possession under Ruggles' reconveyance to him in October, 1855.

After the deed from Snell of March, 1856, it is in evidence, appellant took possession, Snell having abandoned the premises himself, leaving his family in the house for a few days, when they were taken away. In November, 1857, appellant leased the premises to Stone and McDougal for two years. The inference then is irresistible, that appellant went in under the deed from Snell and thereby became the tenant of appellees, and having thus assumed that relation, and entering under that title and the tenancy still existing, he cannot be permitted now to dispute it. *Rigg* v. *Cook,* 4 Gilm., 351; *Dunbar* v. *Bonesteel,* 3 Scam., 34; *Ferguson* v. *Miles,* 3 Gilm., 359; *Tilghman* v. *Little,* 13 Ill., 241.

The appellant became, by Snell's deed, the assignee of the whole term, and as the covenants run with the land, the lessor can maintain an action against him, for the stipulated rents. Taylor's Land. and Ten., 218; *Armstrong* v. *Wheeler,* 9 Cow., 88; *Williams* v. *Woodward,* 2 Wend., 487; *Acker* v. *Witherell,* 4 Hill, 112.

But it is urged by the appellant, that the court erred in admitting in evidence the lease from appellees to R. H. Snell, it being a record copy only.

The objection was, that no foundation had been laid to authorize the introduction of a copy.

The preliminary proof was the affidavit of Walston, one of the plaintiffs, and of James Roberts their counsel and attorney. Walston, sworn, stated, that he had not in his possession, power or control, the lease declared on. Roberts stated that he never had, since the commencement of the suit, the original lease set out in the declaration, and has never seen it, and that it is not within his possession, control or power to produce on the trial.

Under the rules established by this court in *Rankin* v. *Crow,* 19 Ill., 626; *Booth* v. *Cook,* 20 id., 129, and *Stow* v. *The People,* 25 id., 81, this preliminary proof would not have been sufficient, but the legislature has since interposed and by an act to amend chapter 24, title "conveyances," have provided, whenever upon the trial of any cause in law or equity, any party to the cause or his agent or attorney in his behalf, shall

orally in court, or by affidavit to be filed in the cause, testify and state under oath that the original of any deed, conveyance or other writing of or concerning lands, tenements and hereditaments, which may have been acknowledged or proved according to any law of this State, and which by virtue of such law shall be entitled to be recorded, is lost, or not in the power of the party wishing to use it on the trial, the record of such deed as certified by the recorder in whose office it may have been recorded, may be read in evidence in any court in this State with like effect as though the original deed &c. was produced and read. Sess. Laws 1861, p. 174.

This evidence fulfilled the conditions of this statute, the lease having been properly acknowledged and recorded in the proper office.

The deed from Snell to appellant was objected to as evidence on the ground that it was only a general quit-claim deed, and the land claimed was not named in it, and that Snell had other lands in the county designed to be and actually conveyed by it.

The objection has no foundation, since it was open to proof, what passed by the general description in the deed. The record of the deed was competent evidence, notice having been given to appellant to produce the original, which is presumed to be in his possession and under his control. What it proved, whether it conveyed the leasehold interest or not, was another question, and on that question we have no doubt. The estate conveyed by the lease is embraced in the words " all our right, title and interest at law or in equity in and to all lots and parts of lots in the city of Pekin." Snell had a legal estate in the lots leased, and they passed by the deed. *Doty* v. *Wilder*, 15 Ill. 411.

Appellant having entered under the lessor, and thereby become the tenant of the lessor of the whole term, he was, from his position, bound to pay the annual taxes assessed upon the premises while he occupied them.

Mrs. Walston was tenant for her life of the premises, and appellant her lessee by assignment, and the doctrine is that it

is the duty of such tenant to pay all the taxes assessed during his tenancy, and if he neglects it and suffers the land to be sold for the taxes, and purchases it himself, or suffers a stranger to purchase, and then procures a release to himself, he can acquire no right to the estate against the owner in fee. Blackwell on Tax Titles, 472; *Varney* v. *Stevens,* 22 Maine, 361; *Young* v. *Hughes,* 5 Gil. & Johns. (Md.) 67; *Mc Williams' lessee,* v. *Robbins,* 5 Ohio, 28; *Cairns and wife* v. *Chabert and wife,* 3 Edw. Ch. 312; *Burhans et al.* v. *Van Zandt et al.,* 3 Seld. 523; *Trustees of the Village of Elmira* v. *Dunn,* 22 Barb. 402.

But if the appellant did enter into possession under the sheriff's deed, still, having appellees' life estate by assignment from R. H. Snell, he was bound to pay appellees the stipulated rent without any deduction for the taxes, he being bound to pay them either as assignee of the term, or as owner of the fee, both estates being united in him. He cannot, in any shape, set up the taxes as a deduction against the rent, or recoup them, as he was bound to pay them.

Much controversy is made over the pleadings in the cause which we do not deem necessary to notice particularly, the merits of the case being contained in the points we have discussed and decided. We will say, however, that a record showing pleadings so confused and irregular, as they appear in this, has rarely come before this court. We have endeavored to find the grains of wheat, and having found them, have disposed of them as we think they should be according to the law, as we understand it. The judgment of the Circuit Court must be affirmed.

*Judgment affirmed.*