MARY ANN CAMPBELL, Plaintiff, *v.* WILLIAM MORGAN, Defendant.

*Delivery of a conveyance of land to a third party, for the grantee on the grantor's death — a deed and not a will.*

An instrument was executed under seal and acknowledged, whereby the owner in fee of premises undertook, for a good consideration, to "give, bequeath and convey" the same, with reference to an accompanying paper for a full description, to a person named; the instrument was to take effect on the maker's death, and was delivered by him to a third party for delivery to the grantee named therein at the time stated, and was, on the maker's death, delivered to the grantee and recorded.

*Held,* that the instrument was a deed and not a will, and conveyed to the grantee a good title in fee, which a party who had contracted to purchase the premises from the grantee was bound to accept.

SUBMISSION of a controversy pursuant to section 1279 of the Code of Civil Procedure.

On the 30th day of November, 1850, William Jarvis and Eunice B., his wife, conveyed to Peter Broadfoot, by a warranty deed dated that day, and recorded December 30, 1850, in the clerk's office of the county of Westchester in Book 155 of Deeds, page 298, the fee of a lot of land in the then town of West Farms, 117 feet and 8

inches long by 100 feet in width. The grantee entered into possession of the lot, resided thereon November 24, 1880, and continued to reside thereon until his death. He never parted with the title, or any interest therein, until the execution of the instrument dated November 24, 1880. He died intestate April 16, 1881, leaving no descendants, but leaving several collateral relatives entitled to inherit any realty of which he died seized.

Mary Ann Campbell was born March 18, 1847, and in 1853 she was adopted by Peter Broadfoot, and thereafter, and until her intermarriage with James W. Campbell on the 20th day of April, 1891, was called Mary Ann Broadfoot. The adoption was not in the mode provided by the statutes of this State, but she lived in the family with Peter Broadfoot until his death, and was treated as an adopted child. July 11, 1866, the wife of Peter Broadfoot died, and thereafter and until his death the adopted child lived with and cared for him, acting as his housekeeper and nurse until his death. November 24, 1880, Broadfoot signed, sealed, and December 7, 1880, acknowledged and delivered to Andrew Milligan, an instrument of which the following is a copy:

"BROADWAY, TWENTY-FOURTH WARD,
"NEW YORK CITY, *Nov.* 24*th*, 1880.

"This document setteth forth that I Peter Broadfoot, in my seventy-seventh year of sound mind and memory, do in consideration of the fact that my adopted daughter Mary Ann Broadfoot, has, since the death of my beloved wife, been my house-keeper, and been most devoted and self-sacrificing in her efforts to minister to my wants and comfort; and by her uniform kindness and companionship has done much to make my life pleasant and enjoyable. And also in consideration of the fact that were she so minded she could in law and equity claim in compensation for her services to me from the year 1866 until the present time:

"Therefore, for these and other reasons, I do give, bequeath and convey to my adopted daughter, the said Mary Ann Broadfoot, the house and lot of ground which we now occupy, together with the entire premises and all the real and personal property of every kind and name, to have and to hold for her own personal use and to dispose of in such manner and time as she may please.

" A full description of the property herein conveyed will be found in the deeds accompanying this document (except the personal) which are signed and sealed in one package. And be it known and understood that this conveyance does not come into force until after my death and funeral, and that the package be not opened or this document put on record before my funeral has taken place.

" I hereby appoint my friend, Andrew Milligan, of 82 Third Ave., New York city, to be the custodian of these papers and see that their provisions are duly complied with.

" Given under my seal and signature this 24th day of November, 1880.

" PETER BROADFOOT. [L. s.]

" Witnesses :

" ANDREW MILLIGAN, 82 3rd Ave. (Seal).

" STATE OF NEW YORK,   ⎱
*City and County of New York,* ⎰ *ss :*

" On this seventh day of December, in the year one thousand eight hundred and eighty, before me personally came Peter Broadfoot, to me known and known to me to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

" WM. H. RIBLET,

" *Notary Public (No. 1) City and County of New York.*

" 3d Ave. Cor. 9th St."

When this instrument was executed, it and the deed from Jarvis to Broadfoot were sealed in an envelope and delivered to Milligan with directions to deliver them to his adopted daughter after his funeral, which was done, since which time she has remained in the peaceable possession of the lot, claiming title thereto in fee simple under the foregoing instrument, which was recorded May 3, 1881, in the office of the register of the city and county of New York, in Book 1594 of Deeds at page 346.

December 29, 1892, the parties to this submission entered into a written executory contract, by which Mary Ann Campbell agreed to sell, and William Morgan agreed to purchase, the premises described in said deeds for $5,000. One hundred dollars of the purchase price was paid on the execution of the contract, and the

remainder was agreed to be paid on the 13th day of January, 1893, when Mary Ann Campbell was to convey an unincumbered estate in fee simple in the premises to Morgan. Between December 29, 1892, and January 13, 1893, Morgan necessarily expended ninety-four dollars and twenty-five cents for an examination of the title which was reported to be defective, and on that ground he refused to take the deed tendered.

*James R. Marvin*, for Mary Ann Campbell.

*G. De Witt Clocke*, for William Morgan.

FOLLETT, J.:

The question submitted is whether the instrument above set forth conveyed the premises in fee simple to Mary Ann Campbell? If the question is answered in the affirmative, judgment is to be rendered in her favor, that Morgan specifically performed his contract, but if it is answered in the negative, judgment is to be rendered in his favor against Mrs. Campbell for $194.25, and interest thereon from January 13, 1893.

The instrument was executed by the owner of the fee of the subject of the grant, a definite grantee is named, and the instrument has sufficient parties to constitute a legal conveyance. The consideration recited is a valuable one and sufficient to support a grant. The instrument contains sufficient words of conveyance, " I do give, bequeath and convey to my adopted daughter  *  *  *  to have and to hold for her own personal use and to dispose of in such manner and time as she may please." This language carries the fee to the grantee named. The words " give and bequeath," are surplusage and do not affect the validity of the instrument as a conveyance, which is a deed and not a will. The subject of the grant is described as follows : " The house and lot of ground which we (the grantor and grantee) now occupy, together with the entire premises and all the real and personal property of every kind and name, to have and to hold for her own personal use, and to dispose of in such manner and time as she may please. A full description of the property herein conveyed will be found in the deeds accompanying this document (except the personal), which are signed and sealed in one package."

This description is sufficiently definite to convey the title to the

lot in question as against the grantor and his heirs. (*Jackson* v. *De Lancey*, 11 Johns. 365 ; affd., 13 id. 535 ; *Jackson* v. *De Lancey*, 4 Cow. 427–432 ; *Pond* v. *Bergh*, 1 Paige, 140–156 ; *Thayer* v. *Fenton*, 22 N. Y. Wkly. Dig. 85 ; *Scully* v. *Sanders*, 12 J. & S. 89 ; *Wilson* v. *Boyce*, 92 U. S. 320 ; *Prettyman* v. *Walston*, 34 Ill. 175 ; *Bird* v. *Bird*, 40 Me. 398 ; *Harmon* v. *James*, 15 Miss. 111 ; *Whitney* v. *Buckman*, 13 Cal. 536 ; *De Leon* v. *Higuera*, 15 id. 483 ; *Dyne* v. *Nutley*, 14 C. B. 122 ; 1 Dart V. & P. [6th ed.] 602 ; 3 Wash. R. P. [4th ed.] 399 ; 1 Jones Mortg. §§ 65, 66.)

The delivery was sufficient to vest the title in the grantee. (*Hathaway* v. *Payne*, 34 N. Y. 92.)

In the case last cited, a deed was executed upon the stipulation, " That the said deed shall not be delivered to him, the said G. R. Payne (the grantee) during the lifetime of the said G. Payne and Phebe Payne (the grantors), or either of them, but shall be and remain in the possession of Edward Herrendeen, of Farmington, or his executors, administrators or assigns, to be by him the said Edward Herrendeen or his executors or administrators delivered to him, the said G. R. Payne, or to his heirs, executors or administrators, immediately after the decease of him the said G. Payne and Phebe Payne, his wife, as a good and valid conveyance of all the lands therein contained."

The deed was executed in November, 1839. The grantor died November 23, 1848 ; his wife Phebe died April 3, 1854. The grantor left a last will by which he empowered his executors to " convey the real estate of which he should die seized." The executors on the 22d of June, 1854, after the death of Phebe, granted the land described in the deed of November 25, 1839, to one Hathaway, who brought trespass against Gideon R. Payne. A judgment was recovered by the plaintiff at Circuit, and affirmed by the General Term, but was reversed by the Court of Appeals, where it was held that the delivery by Herrendeen to Gideon R. Payne, after the death of the grantor and his wife, vested the title in the defendant. (See, also, *Nottbeck* v. *Wilks*, 4 Abb. 315 ; *Grymes* v. *Hone*, 49 N. Y. 17–22 ; *Hunter* v. *Hunter*, 17 Barb. 25 ; *Crain* v. *Wright*, 36 Hun, 74 ; affd., 114 N. Y. 307 ; 3 Washb. R. P. [4th ed.] 301.)

The question submitted must be answered in the affirmative, and

we hold that Mary Ann Campbell held the absolute fee of the land at the time she entered into the contract with Morgan, who must specifically perform his contract.

VAN BRUNT, P. J.:

I concur. That a deed may be delivered by a grantor to a stranger to be delivered to grantee after death of grantor, such second delivery relating back to the first delivery, seems to have been long settled. (*Ruggles* v. *Lawson*, 13 Johns. 285 ; *Hatch* v. *Hatch*, 9 Mass. 307 ; Sheppard's Touchstone, 58, 59, marginal paging; 2 Washb. on Real Property, p. 586, marginal paging.)

O'BRIEN, J., concurred.